CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 0 1 2019

JULIA C. DUDLEY, CLERK
BY: *[signature]*
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| WAYNE E. HAILEY, **Plaintiff,** | ) ) ) | Civil Action No. 7:18cv00020 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| RED ONION STATE PRISON, et al., **Defendants.** | ) ) ) | By: Michael F. Urbanski Chief United States District Judge |

Wayne E. Hailey, a Virginia inmate proceeding pro se, commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his constitutional rights related to the use of five-point restraints and two separate institutional disciplinary charges. Defendants Red Onion State Prison ("Red Onion"), Qualified Mental Health Professional ("QMHP") Huff, Counselor Gibson, Warden Kiser, and Major Tate filed a motion to dismiss and the motion is ripe for disposition.[1] After reviewing the pleadings, the court grants in part and denies in part defendants' motion to dismiss.

## I.

Hailey alleges that on February 3, 2017, he cut himself and, on February 24, 2017, he reopened the wound. As a result, defendant QMHP Fletcher placed him in five-point restraints. The next day, defendant QMHP Buchanan ordered that he be held in the five-point restraints for an additional twenty-four hours. Hailey claims that he laid in human body waste for "several hours" before he was let up from the restraints and shoved into a cold shower by defendant Sgt. Dixon. After the cold shower, he was not allowed to dry off, was put in a clean pair of underwear, and was re-strapped down, "extra tight" by Sgt. Dixon and other officers. His hands and feet lost feeling and he was in "awful pain" because of the tight restraints. Defendant Nurse McCoy checked the restraints and said they were "okay." However, he claims that the straps of

---

[1] The other defendants filed an answer to Hailey's complaint. See ECF No. 19.

the restraints cut into his skin. He also claims that there was cold air blowing out of the vents in the cell, which caused him to get "real cold" and to shake. Hailey claims that he was tied down over and over again, at least six times, during the "ordeal."

On a separate occasion, defendant Counselor Gibson charged Hailey with an institutional disciplinary infraction for refusing to enter general population, and defendant Warden Kiser approved the charge. Hailey claims that he had an "enemy problem," which he told Warden Kiser about in writing. Hailey argues that Warden Kiser and Counselor Gibson were "attempting to force" him into general population, which was a "dangerous situation" where he could "maybe get hurt bad or killed." Hailey claims that Warden Kiser and defendant Major Tate, head of security, knew his "situation," but nevertheless approved the disciplinary charge, "laughed about it," and "made threats of further harm to [him]." Hailey was found guilty of the charge and fined.[2]

In his response in opposition to defendants' motion to dismiss, Hailey alleges for the first time that defendant QMHP Huff "got involved by letting the ordeal go[] on – know[ing]ly – without caring."[3] Presumably, Hailey was referring to his placement in five-point restraints. Hailey also alleges that Major Tate saw him on the day he was let up from the restraints and Major Tate told him he would put him "straight back down – no matter how much pain and suffering [he] was in." He also states that Counselor Gibson wrote the disciplinary charge for

_____

[2] Although not related to any of the defendants who filed the motion to dismiss, Hailey also alleges that he attended a hearing for a separate institutional disciplinary charge on March 8, 2017. At the hearing, his advisor, defendant Sgt. Berg, "repeated everything" that they had talked about, "thereby causing [him] for sure to be found guilty 100%." Hailey argues that an advisor should not be "allowed to be a witness against a man." Hailey alleges that he consequently did not receive a "fair hearing" and defendant Hearing Officer Counts' should "stand accountable."

[3] The court treats Hailey's response in opposition (ECF No. 25) as a motion to amend and grants the motion.

refusing to enter general population while "knowing he would put [Hailey] in harm's way," and that Warden Kiser knew "what was going on and gave his approval."

## II.

Defendants Red Onion, QHMP Huff, Counselor Gibson, Warden Kiser, and Major Tate have moved to dismiss Hailey's complaint against them. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Consequently, "only a complaint that states a

3

plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. See, e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

Hailey named Red Onion as a defendant. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Neither a state nor an entity considered to be an "arm" of the state can be sued under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Because Red Onion is considered an arm of the Commonwealth of Virginia, this entity cannot be sued under § 1983. See Will, 491 U.S. at 65-70; McCoy v. Chesapeake Corr. Ctr., 788 F. Supp. 890 (E.D. Va. 1992).

## IV.

Hailey alleges that Counselor Gibson, Warden Kiser, and Major Tate were involved in "attempting" to "force" Hailey to go to general population despite "knowing" that it would be dangerous for him. To the extent Hailey is arguing that these defendants failed to protect him, his allegations fail to state a cognizable claim. An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014); see Farmer v. Brennan, 511 U.S. 825, 833-35 (1994). To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Farmer, 511 U.S. at 834. Although he alleges that the defendants attempted to force him into entering general population, Hailey does not allege that he did, in fact, enter general population. Instead, he alleges that he was found guilty of the disciplinary charge for failing to enter general population and received a fine for his conviction of the charge. Because Hailey does not allege that he was actually incarcerated under conditions posing a substantial risk of serious harm or that he actually suffered any harm, he has not stated a cognizable failure to protect claim. Accordingly, the court will grant defendants' motion to dismiss as to this claim.

## V.

To the extent Hailey is alleging that Warden Kiser and Major Tate are liable as supervisors, his allegations fail to state a cognizable claim. Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. See Monell v. Dep't of Soc.

5

Servs., 436 U.S. 658, 663 n.7 (1978). A claim that prison staff did not follow VDOC policies or procedures also does not state a constitutional claim. See United States v. Caceres, 440 U.S. 741, 752-55 (1978); Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). To satisfy the requirements of the first element, a plaintiff must establish: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. Id. at 373-74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." Id. at 373.

Hailey alleges that Warden Kiser and Major Tate approved the disciplinary charge filed by Counselor Gibson, despite knowing about his "situation." Hailey's vague and conclusory

allegations are insufficient to support a finding of supervisory liability. As such, the court will grant defendants' motion to dismiss as to any supervisory liability claim against these defendants.

## VI.

To the extent Hailey alleges that Warden Kiser and Major Tate made comments that may constitute verbal abuse, threats, or harassment, the comments alone do not rise to the level of an Eighth Amendment violation. Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)). The Constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A [§]1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation."). Accordingly, the court grants defendants' motion to dismiss as to any claim concerning threats made by Warden Kiser or Major Tate.

## VII.

Finally, Hailey alleges that QMHP Huff knew that other defendants were subjecting Hailey to cruel and unusual living conditions while he was in five-point restraints, chose to "let" it happen, and did not care. Under a theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). The court finds that, accepting the factual allegations as true and drawing all reasonable inferences in favor of the Hailey, he has stated a plausible claim for relief against QMHP Huff. Accordingly, the court will deny the motion to dismiss as to a bystander liability claim against QMHP Huff.

## VIII.

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.

ENTER: This 1st day of ~~February~~ MArch, 2019.

/s/ Michael F. Urbanski
Chief United States District Judge