# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

| | | |
|---|---|---|
| **WAYNE EDWARD HAILEY,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18cv00020 |
| | ) | **MEMORANDUM OPINION** |
| **SGT. DIXON, et al.,** | ) | |
| Defendants. | ) | |

The plaintiff, Wayne Edward Hailey, ("Hailey"), a Virginia Department of Corrections, ("VDOC"), inmate previously incarcerated at Red Onion State Prison, ("Red Onion"), and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, various VDOC employees at Red Onion, had violated his constitutional rights. This case is before the court on the defendants' Motion For Summary Judgment, (Docket Item No. 36), ("Defendants' Motion"), and the plaintiff's Motion For Summary Judgment, (Docket Item No. 42) ("Plainitff's Motion"). Based on the evidence before the court, I will enter summary judgment in the defendants' favor.

## I. Facts[1]

In his Complaint, which is not sworn, Hailey alleged that while incarcerated at Red Onion, he cut himself on February 3, 2017, and, on February 24, 2017, he reopened the wound. As a result, Hailey was ordered to be placed in five-point

---

[1] On a motion for summary judgment, the court may review a number of materials to determine whether a genuine dispute of any material fact exists, including sworn testimony, affidavits, sworn pleadings, discovery responses and other materials contained in the record. *See* FED. R. CIV. P. 56(C).

restraints by Qualified Mental Health Professional, ("QMHP"), Fletcher. Hailey alleged that QMHP Buchanan ordered that he remain in five-point restraints for another 24 hours on February 25, 2017. In his response to a prior motion, Hailey alleged that QMHP Huff approved Buchanan's order. Hailey alleged that he laid for hours in his own waste before he was let up by Sgt. Dixon and shoved into a cold shower.  He said that he was not allowed to dry off before he was placed back in restraints. Hailey alleged that when he was returned to restraints, the restraints were too tight, causing him pain and a loss of feeling in his hands and feet. He said that Nurse McCoy approved the tightness of the restraints. Hailey also alleged that, while in restraints, he was wearing only his underwear, and the cell was very cold.  Hailey alleged that he was let up and then placed back in restraints on six occasions during this 48-hour period.

Hailey further alleged that his rights were violated when his disciplinary Hearing Advisor, Sgt. Berg, at a March 8, 2017, hearing, repeated their discussions to Hearing Officer M. Counts, causing Counts to find him guilty of the charges. Hailey also alleged that his rights were violated by Counselor Jonathan Gibson when Gibson charged him with a Disciplinary Code 201-B offense for refusing to enter general population. He stated that Warden Kiser approved the charge. Hailey alleged that Gibson had attempted to force him into general population where he was at risk of being "hurt bad or killed."  Hailey alleged that Major Tate, the head of Security, also approved of the charge. Hailey stated that, on February 26, 2017, Tate told him that he would return him to five-point restraints for 48 more hours if he "moved wrong or said a wrong word" or did "anything he didn't like." Hailey said that he was found guilty of this charge and fined.

Hailey's Complaint seeks $25,000 in damages for pain and suffering.

By Order entered March 1, 2019, the court dismissed Hailey's claims against defendants Red Onion, Gibson, Kiser and Tate. (Docket Item No. 29.)

The defendants have provided an Affidavit from Gary Adams, Acting Grievance Coordinator at Red Onion, in support of the Defendants' Motion. (Docket Item No. 37-1, ("Adams Affidavit")). A copy of VDOC Operating Procedure, ("OP"), 866.1, Offender Grievance Procedure, was attached to Adams's Affidavit, (Adams Affidavit at 8-21.) Under OP 866.1, all issues are grievable except those pertaining to policies, procedures and decisions of the Virginia Parole Board, disciplinary hearings, state and federal court decisions, laws and regulations and other matters beyond the control of the VDOC. (Adams Affidavit at 2; OP 866.1 at 5.)

According to Adams, grievances which do not meet the filing requirements of OP 866.1 are returned to the offender within two working days from the date of receipt, noting the reason for return on the intake section of the grievance form. (Adams Affidavit at 2.) The offender is instructed how to remedy any problems with the grievance when feasible. (Adams Affidavit at 2.) If an offender wishes review of the intake decision on any grievance, he may send the grievance to the applicable Regional Ombudsman within five calendar days of receipt for a determination. (Adams Affidavit at 2.) There is no further review of the intake decision. (Adams Affidavit at 2.)

A review of OP 866.1 shows that it requires complete exhaustion. OP 866.1 states:

> An offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue.

> ... If a Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria for acceptance. The exhaustion of remedies requirement will be met only when the Regular Grievance has been accepted into the grievance process and appealed through the highest eligible level without satisfactory resolution of the issue.

(OP 866.1 at 6.)

Prior to submitting a regular grievance, the offender must demonstrate that he has made a good faith effort to informally resolve his complaint, which may be accomplished by submitting an informal complaint to the Grievance Department at the appropriate institution. (Adams Affidavit at 2.) The informal complaint will then be forwarded to the appropriate department head. (Adams Affidavit at 2.) Prison staff should respond to an informal complaint within 15 calendar days to ensure that informal responses are provided prior to the expiration of the 30-day time period in which an offender may file his regular grievance. (Adams Affidavit at 2.) Regular grievances are to be submitted within 30 days from the date of the occurrence/incident. (Adams Affidavit at 2-3.) Only one issue may be addressed per grievance. (Adams Affidavit at 3.) The regular grievance must accompany all records necessary to investigate and address the informal complaint. (Adams Affidavit at 3.) Regular grievances are considered received when they are dated/date stamped on the working day received. (Adams Affidavit at 3.)

There are three possible levels of review available for regular grievances that are accepted at intake. (Adams Affidavit at 3.) Level I reviews are conducted by the Facility Unit Head of the facility where the offender is located. (Adams Affidavit at 3.) If the offender is dissatisfied with the Level I determination, he may appeal to Level II. (Adams Affidavit at 3.) Level II reviews are conducted by the Regional Administrator, Health Services Director or Chief of Operations of Classification and

Records. (Adams Affidavit at 3.) For most issues, Level II is the final level of review. (Adams Affidavit at 3.) For those issues appealable to Level III, the Deputy Director or the Director of the VDOC conducts a review of the regular grievance. (Adams Affidavit at 3.) The time limit for issuing a Level I response is 30 days, 20 days for a Level II response and 20 days for a Level III response. (Adams Affidavit at 3.) Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the regular grievance for appeal to the next level of review. (Adams Affidavit at 3.)

According to Adams, grievance records reflect that Hailey submitted Informal Complaint # ROSP-17-INF-01228 on June 16, 2017, alleging that he had been tied down to a bed with no clothes on, was cold and lying in human waste, was forced to take a cold shower and not allowed to dry off and was threatened to be strapped down for an additional 48 Hours. (Adams Affidavit at 5, 28.) Adams said that Unit Manager L. Collins responded to this Informal Complaint, instructing Hailey to resubmit it with the dates of the incident. (Adams Affidavit at 5, 28.) Hailey resubmitted his complaint on June 30, 2017, on Informal Complaint # ROSP-17-INF-01321, Adams said, listing the date of the incident as February 24-26, 2017. (Adams Affidavit at 5, 29.) Adams said that Hailey withdrew this Informal Complaint on July 5, 2017. (Adams Affidavit at 5, 29.)

According to Adams, Hailey filed regular grievances on June 22, August 7 and October 3, 2017; each of these grievances was rejected at intake due to expired filing time. (Adams Affidavit at 6, 30-37.) The documents attached to Adams's Affidavit show that one of these grievances, the one dated June 21, 2017, mentioned false disciplinary charges, and it was rejected at intake for failure to use the informal procedure first. (Adams Affidavit at 30-31.) Another of the grievances mentioned an incident involving damage to Hailey's property. (Adams Affidavit at 32-33.) The

third of these grievances addressed the incident when Hailey was placed in five-point restraints; it was rejected at intake for expired filing period. (Adams Affidavit at 35.) According the Adams, Hailey appealed each intake decision to the Regional Ombudsman, who upheld the intake decision. (Adams Affidavit at 6, 33, 36.)[2]

Adams said that Hailey submitted Informal Complaint # ROSP-17-INF-01986 on October 5, 2017, in which Hailey stated that OP 866.1 stated that, if a grievance was rejected for intake for any reason, then a prisoner must keep filing a complaint and grievance on the same issue until it is accepted for review. (Adams Affidavit at 6.) Hailey stated that it was impossible to follow the Grievance Procedure to do this, if a time limit was set on when a prisoner could file a grievance. (Adams Affidavit at 6.) Adams said that his office responded to this Informal Complaint, stating that all of Hailey's grievances had been processed in accordance with the operating procedures. (Adams Affidavit at 6.) Adams said that Hailey then filed a Regular Grievance on which he complained that the Grievance Procedure required him to keep resubmitting informal complaints and regular grievances concerning the same issue until they were accepted for intake. (Adams Affidavit at 6.) This Regular Grievance was rejected at intake for expired filing time, and Hailey appealed the intake decision, which was upheld. (Adams Affidavit at 6, 38-39.)

The defendants also provided an Affidavit from Red Onion Hearing Officer M. Counts in support of the Defendants' Motion. (Docket Item No. 37-2) ("Counts Affidavit"). According to Counts, VDOC OP 861.1 sets out the guidelines for conducting inmate disciplinary hearings. (Counts Affidavit at 1.) A copy of VDOC OP 861.1, Offender Discipline, Institutions, was attached to the Counts Affidavit. (Counts Affidavit at 6-45.) According to Counts, under OP 861.1, when an offender

---

[2] The documents attached to Adams's Affidavit do not show that Hailey appealed the intake decision on his June 21, 2017, Regular Grievance. (Adams Affidavit at 31.)

is served with a copy of his disciplinary offense report, he is made aware of his due process rights, including his right to have an inmate or staff advisor for his disciplinary offense hearing. (Counts Affidavit at 2.)

Counts said that OP 861.1 defined an advisor as a staff member or offender provided to assist the accused offender in the disciplinary process. (Counts Affidavit at 2.) According to Counts, an advisor must possess an adequate knowledge of the disciplinary process and all relevant operating procedures accessible to offenders. (Counts Affidavit at 2.) Counts said that the role of an advisor would vary from case to case based on the specific needs of the accused offender. (Counts Affidavit at 2.) Counts said that an accused offender may not choose a specific advisor, but, rather, the Hearings Officer would appoint an approved advisor. (Counts Affidavit at 3.) According to Counts, because Red Onion in a Level 5/6/S institution, offenders are not assigned to be advisors, but only Red Onion staff members act as advisors for disciplinary hearings. (Counts Affidavit at 3.)

According to Counts, records reflect that Hailey had three separate disciplinary offense hearings on March 8, 2017. (Counts Affidavit at 3.) Counts said that Sgt. Berg served as Hailey's appointed advisor for all three of his disciplinary hearings on March 8, 2017. (Counts Affidavit at 3.) Counts said that, based on her review of Hailey's March 8, 2017, hearings, she believed that Hailey was complaining regarding a statement made by Berg at his hearing on a disciplinary offense 237A charge for intentionally throwing-smearing-pouring or discarding food, trash, bodily waste, ROSP-2017-0220. During that hearing, Counts said, she read into the record statements from a mental health assessment of Hailey, in which a QMHP stated that Hailey's behavior was not a result of mental illness and that Hailey's mental health did not interfere with his ability to understand disciplinary reviews or consequences. (Counts Affidavit at 3.) Counts said that she then asked

Hailey if he had any questions or anything that he wanted Counts to consider. Counts said that Hailey complained that he had not spoken to his staff advisor, Berg. Hailey said that Berg told him only that he was his advisor. (Counts Affidavit at 4.) Hailey said that he and Berg had not spoken regarding any of the charges he had received. Counts said, when she questioned Berg, Berg stated that he had spoken to Hailey and that Hailey told him that he considered himself guilty as sin, but he was going to go through the process anyway. (Counts Affidavit at 4.)

Based on Berg's statement, Counts said that she found that Hailey had an opportunity to speak with his advisor. Counts said that Hailey pleaded not guilty to the charge and, when asked to tell Counts about the offense, Hailey began to tell her that he was on mental health status at the time of the alleged offense and had not been released. (Counts Affidavit at 4.) Counts said that he informed Hailey that, at the time of the charges, he was under the mental health status of not being allowed to possess any metal objects, but that was not a reason to dismiss the charge; Counts said that Hailey did not make any statement to dispute the offense charged. (Counts Affidavit at 4.) Counts said, based on the charging officer's statement and Hailey's failure to provide any information to contradict the officer's statement, she found Hailey guilty of the charge as written; she said that she sentenced Hailey to 60 days loss of telephone privileges. (Counts Affidavit at 4, 46-48.)

In his response in opposition to the Defendants' Motion, which also is not sworn, Hailey stated that he had exhausted available remedies, and he cited an attached Regional Ombudsman's decision. (Docket Item No. 40 at 1.) Hailey attached to his opposition his October 2, 2017, Regular Grievance, in which he complained of being placed in five-point restraints on February 24-25, 2017. This Regular Grievance shows that it was rejected at intake for expired filing period, and this intake decision was upheld on appeal. (Docket Item No. 40-1.)

Hailey also has filed a motion for summary judgment, which is not sworn. (Docket Item No. 42) (Plaintiff's Motion). In Plaintiff's Motion, Hailey alleged that he was convicted on disciplinary offenses at the March 8, 2017, hearings because his advisor, Berg, gave evidence against him. (Plaintiff's Motion at 2.) Hailey also alleged that QMHP Buchanan called QMHP Huff for approval of the decision to hold Hailey in five-point restraints for an additional 24 hours on February 25, 2017. (Plaintiff's Motion at 3.)

*II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the

mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

The Defendants' Motion argues that the defendants are entitled to summary judgment because Hailey did not exhaust his administrative remedies before filing suit. The Prison Litigation Reform Act of 1995, ("PLRA"), requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *See* 42 U.S.C.A. § 1997e(a) (West 2012). It provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)); *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[F]ailure to exhaust is an affirmative defense under the PLRA" and, therefore, must be both pled and proven by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007). A prisoner must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *See Woodford*, 548 U.S. at 85 (citing *Booth*, 532 U.S. at 734). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 93. Proper exhaustion of administrative remedies for PLRA purposes means using all steps that the agency holds out, and doing so properly, so that the agency addresses the issues on the merits. *See Woodford*, 548 U.S. at 90. Therefore, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through

all available levels of appeal, prior to bringing his action to court. *See Woodford*, 548 U.S. at 90.

All of this being said, then, before Hailey may proceed with his claims in this court, he must first have exhausted the administrative remedies available to him through the VDOC's Grievance Procedure. Based on the evidence before the court, I find that there is no genuine dispute of material fact that Hailey did not properly exhaust his administrative remedies on his claims before filing suit. Hailey's Complaint raises claims based on three incidents: 1) being placed in five-point restraints on February 24-25, 2017; 2) his advisor, Berg, offering testimony against him at his March 8, 2017, disciplinary offense hearings; and 3) being charged with a disciplinary offense for refusing to go to general population on February 26, 2017. The undisputed evidence before the court shows that Hailey filed Informal Complaint #ROSP-17-INF-01228 on June 16, 2017, regarding being placed in five-point restraints. Hailey was instructed to resubmit the Informal Complaint giving the specific date and time of the alleged incident. Hailey then filed Informal Complaint #ROSP-17-INF-01321 on June 30, 2017, stating that the incident occurred on February 24-26, 2017. This Informal Complaint reflects that Hailey withdrew it on July 5, 2017. Hailey then filed a Regular Grievance, dated June 21, 2017, on which he stated only that he was seeking "damages for bodily harm … -- being made to lie in waste." This Regular Grievance was rejected on intake for failure to first use the informal process. According to Adams, this intake rejection was upheld on appeal to the Regional Ombudsman. Hailey filed another Regular Grievance, dated October 2, 2017, on which he complained, "I was tied down…." This Regular Grievance was rejected upon intake for an expired filing period. This intake rejection was upheld on appeal on October 10, 2017. Hailey's June 21, 2017, Regular Grievance also mentioned unspecified false disciplinary charges. Again, this Regular Grievance was rejected at intake.

In response to this undisputed evidence, Hailey argues that he appealed each rejected grievance to the Regional Ombudsman, the highest appeal level. These actions, however, are not sufficient to show exhaustion. As stated above, OP 866.1 requires complete exhaustion, in that it specifically states that any regular grievance rejected at intake must be resubmitted. It also states that exhaustion is accomplished only when a regular grievance concerning a complaint is accepted into the process and appealed through the highest appeal level. The undisputed evidence in this case shows that Hailey did not do this for any of his claims.

Based on the above, I will grant the Defendants' Motion, deny the Plaintiff's Motion and enter summary judgment in the defendants' favor based on Hailey's failure to exhaust his administrative remedies prior to filing suit. Based on my findings on this issue, I do not address the additional argument made in support of the Defendants' Motion.

An appropriate order will be entered.

ENTERED: February 10, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE